Ms. Lukemeyer. Good morning, your honors. And if you want the podium higher, the same switch. It's amazing. Too much. Good morning, your honors. My name is Jennifer Lukemeyer and I am appearing on behalf of Abel Covarrubias, the appellant in this matter and the defendant below. In March of 2015, a New Mexico State Trooper stopped a car hauler. On the car hauler was a Saturn View that had been loaded from California and was destined to Indianapolis. The government's theory is that the Saturn View was destined for our client Abel Covarrubias. The New Mexico State Trooper stopped the car hauler for a problem with his license plate. After giving a citation and checking all the bills of lading to ensure that the cars on the hauler were appropriately designated, the trooper became suspicious of the Saturn View. He became suspicious because the bills of lading for the Saturn View had the same phone number for the sender and the receiver. He became suspicious because there was no license plate on the Saturn View or license plate referenced on the bill of lading. However, what was deemed oddities by the trial court, those similar oddities were situated for other cars on that car hauler. However, the trooper found this suspicious enough that he started to ask the car hauler driver to get into the vehicle, the Saturn View, and find the license plate was not located in the Saturn View. So the trooper starts to do some researches to the origination of this vehicle and found that it was an unregistered or expired registration at that point and its last owner resided, I believe, in Illinois. Based on that and based on the fact that this was a perceived drug route, the trooper asked the car hauler for consent to search that Saturn View. The trial court found that there was reasonable suspicion enough to ask for that examination. The examination turned up approximately 46 pounds of methamphetamine. Saturn View was delivered to Mr. Covarrubias, who then delivered the car to an address and then drove off in another vehicle and he had a key to the Saturn View in his pocket. The trial court found that there was no subjective or objective reasonable expectation of privacy in that view by our client, Mr. Covarrubias. We believe that the findings, the factual findings, were clearly erroneous because we believe respectfully that the trial court ignored some of the other oddities, or excuse me, that the trial court ignored this court's mandate in Crowder that based on the way that the car was packed, even though there was aliases, and based on the fact that the phone calls were in fact directed towards Mr. Covarrubias, that they were not subjectively, he would not hold an expectation of privacy. We would submit that Crowder even acknowledges, despite the secrecy of the organization and the packing of the car, that there was a subjective expectation of privacy. As the objective expectation of privacy, we believe that the trial- I'm not sure how we, I'm not sure how you're getting to an expectation of privacy. District court found that your client didn't own the car, had never been inside the car before, and had no expectation that he would control the contents of the car in any way. Are you disputing any of those findings? Well, where I'm disputing it is, in fact, the phone records that was- I asked a particular question. Are you disputing any of those three findings? Not that that were findings. We dispute the factual support for that. You dispute the conclusions drawn from those findings, but not the findings. Absolutely, yes, I would agree. But as to the objective expectation of privacy, the trial court, the facts were different than what were before this court in Crowder. In Crowder, the- I don't see why Crowder matters one way or the other. The question is not whether this is the same as Crowder. The question is whether there's a legitimate expectation of privacy under the Supreme Court's standards. And the judge said- the district judge said not for the three reasons that I just ticked off, and which appear to be uncontested. Judge, I would respectfully agree with the findings in that those were factual- that was evidence before the district court. However, the way that they connected this car to our client throughout both the suppression and it was destined for our client, and that the phone record showed that this client orchestrated the car being shipped from California to Indiana supports the subjective in the way it was packed, the way it was, the concealment, the efforts that went through the concealment, revealed that he would have a subjective expectation of privacy. The objective expectation of privacy can be found in the bill of lading, in that there was not just kind of turning it over to the third party carrier. We understand and we acknowledge that in you shipping something with the third carrier does not relinquish or a bailment relationship does not completely relinquish all expectations of privacy. And that's exactly what Mr. Covarrubias was expecting in this situation. And the government, for the purposes of suppression hearing, consistently says no, it wasn't his, he didn't have standing, he didn't have an expectation of privacy. But when it comes to trial, it is always that that's Mr. Covarrubias' car. He arranged for it to be here. He arranged for the drugs to get in it.  And so for the purposes of suppression, they never want to acknowledge that Mr. Covarrubias has any possessory interest in that vehicle. For the purposes of conviction, they want to attribute everything about the car, the drugs, and the delivery to Mr. Covarrubias. And so back to the, and so once the, even if the district court, as she indicated, even if there was standing on behalf of Mr. Covarrubias to challenge the stop. She found that there was reasonable suspicion based on the trooper's observation that there was apparent authority for this car hauler driver to give authority to the trooper to search the car. We would respectfully disagree with that, based on the bill elating. Being that the bill elating in this case, strictly limited his authority over that vehicle. It was limited to the fact that he was to drive it on and drive it off in case there was an emergency. Without any further questions, I will reserve the balance for my rebuttal. Certainly, counsel. Mr. Wrights. May it please the court, Brian Wrights for the government. This court's case in Crowder controls that Covarrubias had no reasonable expectation of privacy. And the vehicle that was not his on the car hauler, and even if not under Crowder, the driver of the car hauler had apparent authority to search the vehicle. There are no further questions. The government would be happy to rest on its brief. Thank you. Thank you. Ms. Woodmire, not much for you to respond to. Not much, your honor. If I may, though, just add on the apparent authority argument. We do believe that the bill of lading limited the access and the control of that car hauler's, the driver's access to the vehicle. As well as we believe that the trial court respectfully was clearly erroneous in her factual findings that there was no objective or subjective expectation of privacy and the reasonable suspicion. Even if it was there, we concede does not, and the evidence did not support the apparent authority for that car hauler driver to give consent to search the vehicle. That will conclude my argument. Thank you. Thank you very much. The case is taken under advisement.